v. Regions Bank. Would counsel for the appellant identify himself, please? Good morning, Your Honor. Brian Yates on behalf of the appellant of Regions Bank. Thank you. And counsel for the appellate? Good morning, Your Honor. Evan Siegel, Assistant Attorney General for the people of the state of Illinois, XREL, the Illinois Department of Natural Resources. Thank you. At this time, Mr. Yates, you may begin your argument. Good morning, Justices. Counsel, may it please the court. The trial court here erred in two respects. First, although it was required to apply under Illinois law to apply the plain language of the unambiguous letter of credit, the trial court rewrote the letter of credits renewal clause, which originally provided for an automatic extension of an additional term of one year in the singular, to instead provide for to that it would continue to renew each and every year for the term of an additional year, unless and until the bank sent a notice of non-renewal. None of those words continue to renew each and every year are found in the letter of credit that we have for an issue in this case. Secondly, the trial court erred in finding that the letter of credit did not contain an initial expiration date. Such a finding would render the renewal clause entirely meaningless. If there was no expiration date, there would be no reason to need to renew at all. And the bank could not have possibly given a notice of non-renewal at least 90 days prior to the expiration date, which is the language of the letter of credit, if there was no expiration date to trigger that 90 days. So counsel, good morning. I have a question for you right at the beginning here. As I read your briefs and listen to your opening, it's your position that this letter of credit expired in December 1987, based on the bank's failure to provide the required notice of non-renewal. Is that correct? Somewhat. The letter of credit did expire December 12 of 1987. The notice of non-renewal was only to be served or provided in 90 days before September of 1986. That's what would trigger the one year renewal. There was no provision for further renewal beyond 1987. But let me interrupt you there. This letter of credit contains an automatic renewal provision that controls in the absence of the cancellation notice. It says, for example, well, not for example, it says, and I'm reading, this letter of credit will automatically extend for an additional term of one year, unless the bank provides at least 90 days notice prior to the expiration date, that it does not wish to extend the letter of credit for an additional period. And we know there's also no termination date. So why isn't that automatic renewal provision effective to renew this letter of credit each year until the required notice? For example, until the expiration of this mining permit? Because the court is bound to apply the plain language of the letter of credit, which provides for a single and additional term of one year. It's a singular reference, and it's we cite the Ni Chavez versus Garland case from the U.S. Supreme Court, recent 2021 decision in that case considered was not a letter of credit case, but it considered a or an, which precedes a countable now, in this case, an additional term. It's a countable now. You don't refer to automatically extend additional term. You would an additional term or you might say for additional terms, but there is no there's no reference to the plural here. It's a singular reference. And that's what changes. That's what takes this case and changes it from every other evergreen letter of credit case that we cite throughout our papers, all of which provide for multiple terms or for automatic extensions from the present expiration date or a future or subsequent expiration date. They either refer to terms plural or they specifically provide for there are it contemplates future expiration dates. That's where this one is different. And in fact, the only decision that has been cited in this entire case is the Stringer construction case, Illinois appellate court case, which considered a nearly identical letter of credit renewal clause such as we have here, which in Stringer, the letter of credit provided for an automatic extension of an additional period of up to one year. And the appellate court there said they read it the same way we do, which is to say that the the parties clearly understood that it would not renew for anywhere beyond one year. It was limited to one year. And so that's the plain language that we all agree that the letter of credit here is unambiguous. And so the court is bound by the plain language of the letter of credit and the plain language is a single and additional term of one year. And that's why there was need. I'm sorry. Go ahead. Finish your sentence. And that's why that's why there was no need for the bank to serve a non-renewal notice in September of 1987 because it had a one year term. And the department had full right to they could have at that point drawn. It didn't do that. And the letter of credit expired December 12 of 1987. So now your position below was that this letter of credit was the language was unambiguous. Is that your position at this time or you don't feel that the trial court created a patent ambiguity here so that we could or should look outside the four corners of the this letter of credit? Well, our position is that the letter of credit is unambiguous there. We don't need to look to extrinsic evidence. The trial court's rewriting of the letter of credit, if you will, would create a patent ambiguity because to find the trial court found that there was no initial expiration date, but that it also had to renew from the expiration date. And those two things, they can't go hand in hand. And so that's the problem with the trial court's opinion. But for with respect to the credit itself, our position is that it is unambiguous. OK, and the UCC isn't of any help at this point, is it? There was an original. Well, this letter of credit was issued, we know, in 1985. The UCC, in effect, on that date was issued in 61. And that 1961 version did not address perpetual letters of credit or those without a definite expiration date. Isn't that correct? Correct. The UCC, it governed in this case, but it doesn't inform. I'm sorry, it does not. It does not inform the issue. That's it. OK. Thank you. Simply, whether we apply the plain language or if we're going to rewrite it to find that as the as the department has argued that as they did a page 15 of their brief, that the renewal clause actually means that it extends for an additional year on every December 12th. Those words appear nowhere in the letter of credit. It is instead an additional term of one year unless a non-renewal notice is provided 90, at least 90 days prior to the expiration date, which can only refer under the context and the document as a whole to December 12, 1986. Now, did this contract, the entire contract of which this letter of credit was a part, renew each year? And if so, did that not also renew this letter of credit provision? And is that something we should be cognizant of or consider in our deliberations today? No, and I think what I think your honor is referring to the the underlying agreement between the the beneficiary and the applicant, surefire coal. So, no, the court doesn't look to that. The idea of a letter of credit, you have three separate agreements and this is the agreement between the the beneficiary and the issuing bank. It's governed by what's called the independence principle. So the court doesn't look to the underlying agreement. The court only looks to what are the terms of the letter of credit to govern whether payment is required. That's it. There's no, there's no, you don't go beneath that to see whether the underlying document provided for something else between the parties. So, we believe stringer construction governs this case. It interpreted a letter of credit that was almost exactly identical to the renewal clause that we have here. And it held that the plain language was clear, an additional period of up to one year meant it was not going to extend beyond one year. Here, we have a provision for an additional term of one year. It means what it says. It means one year. As Justice Gorsuch observed in the Denise Chavez case, a written notice referred to a single written document that contained all of the required information. It didn't mean, as the government urged the Supreme Court to accept one or many documents that eventually would contain all of the things when you put it together. It was a single written document because it's a, it's a countable noun. As he said, you wouldn't refer to writing manuscript or sending job application. You would say a manuscript or a job application. And here you would refer to extension for an additional term. So, with respect to stringer, the language might be similar, but it's not exact. There is, there was no, there was no language providing for automatic renewals. Isn't that correct? And I think there, it's the credit authorized the beneficiary to request an extension of the expiration date for an additional period of up to one year. I mean, should that impact our analysis at all here of the renewal clause in our letter of credit? No, because in stringer, it would automatically renew on the request of the beneficiary. The difference here, it would automatically renew on the, on the action or inaction of the issuer. So, it's, whether the action, whether the predicate event is to be taken by the beneficiary or the issuer is really of no moment to what we have here, which is in either case, stringer or here, it would extend. In that case, if the beneficiary requested, in this case, if the bank did not send a notice of non-renewal, it would extend for an additional period or an additional term of up to one year. So, the extension itself is exactly the same. And when the court applies the plain language, it's not that if the parties wanted an evergreen letter of credit, they knew how to do that, they could have done it. It's not the court's job to go back and write new terms or additional terms or change the language to fix that some 40 years after the fact. And we know the department knew how to do this because in 2005, they revised their letter of credit form. The letter of credit we have at issue is their form. That's it. They gave it to us and that's what they promulgated. And in 2005. It was on the bank's letterhead, was it not? So, on the bank's letterhead. So, why shouldn't it be construed against the bank and in favor of the department? Because it was the department's form. The department gave the form, they promulgated the form. We took it, we put it on our letterhead as the issuing bank and issued an agree to honor in pursuant to the terms of the letter of credit, but it's their form. And in 2005, they revised the form, recognizing that the form they had, which is what we have in this case from 1985, did not provide for an evergreen letter of credit. And so they revised it to make it evergreen. And they changed the document to say it will automatically extend for additional successive terms of one year each from the original date of issuance. That's a market difference from what we have in the letter of credit. So, that's extrinsic evidence here, is it not? I mean, why should we consider that at all? I thought we're focusing on the language of the letter of credit and the four corners of that letter of credit. We are, but it fits with, as Justice Gorsuch observed in Denise Chavez's case, it shows that the party urging you to adopt a certain reading of a statute or a contract once read it the same way we do. And that's what happened in the government in that case with respect to a written notice. And that's what we have here, where clearly the department read this language one way before in 2005 when they revised their forms to expressly provide for an evergreen letter of credit to now when they're urging the court to rewrite the 1985 form and provide for future subsequent and additional extensions beyond what the document actually states. And I would, in closing, I would simply ask the court, if we go through the cases that we've cited in our papers and we cite a number, and they address actual evergreen letters of credit, they all have market differences in language in how they provide for future additional extensions of time. They refer to present or future expiration dates, such as in the Malter Corporation case or the Sports Inc. case out of Kansas. They refer to successive one-year periods, additional one-year periods, but they all refer to extensions in the plural rather than the singular here. All of those cases are entirely consistent with the department's new form and inconsistent with both the letter of credit here and the conclusion of the Stringer court with respect to that letter of credit. So are you saying there's only one way that is using plurals to create an evergreen clause? Well, those cases, the language has differences. There are different ways to express that there will be multiple terms, such as referring to it will automatically extend from the present or any future expiration date, or it will extend for successive one-year terms. It will extend, as the department says, automatically year over year. Hold on one second, please. Justice Dierman needs to sign off for just a second. So we're right at the five minute mark if you need more time, but he advised Justice Vancel and myself that he might have to excuse himself for a couple minutes at this time. So if you would be patient with us, please. No problem. Thank you. I apologize for the interruption. That's okay. And I, of course, interrupted Mr. Yates. So if you want to finish up, go ahead, please. Sorry, you're wrong. We can start the clock again. I think I'm at the conclusion of, I would simply close in saying that the court is not to rewrite an unambiguous contract to include additional terms or words that were not there, which is what the department is urging in this case. So I would simply, if there are no further questions, reserve the remainder of my time for revote. Justice Dierman or Justice Vancel, do you have any questions at this time? No, thank you. Thank you. Mr. Siegel. Good morning and may it please the court, counsel, I'm Assistant Attorney General Evan Siegel on behalf of the people. And your honors, this court should affirm the judgment of the circuit court because the letter of credit renewed automatically each year for one year periods unless the bank communicated an intent not to renew. And that communication never happened. Renewal, therefore, occurred year after year. So counsel, so I know I'm interrupting right away, but I don't want to lose this thought. So in order for us to affirm the trial court here, wouldn't we have to really rewrite this letter of credit, rewrite the language? Right now, I believe it's written with the words letter of credit will automatically extend for an additional term of one year. Wouldn't we have to change it to or acknowledge the trial court changed it to annually and automatically extends for an additional year on every December 12th? I mean, can the trial court really do what it did and can we affirm based on rewriting the language that of this letter of credit? No, your honor, you cannot rewrite the letter of credit because the principle of the four corners doctrine governs and the language as written is sufficient. I want to speak a little bit about an additional term to address your question and is the indefinite article. That's what's discussed in the Supreme Court case that counsel mentioned. But there's a very different outcome under Illinois law in a case called Allstate versus Smiley from the second district. It's 276 Illap 3971. And there's a lengthy discussion there that and is an indefinite article and is applied to more than one individual object. So closer to home under Illinois law, indefinite articles mean a person or thing that's not identified or specified. It applies to more than one thing here to more than one renewal term. So I would urge the court to take a look at that case and to read an additional term as as indefinite. To read the language as the bank suggests is to impose new language that doesn't exist, such as maybe reading in the term will automatically extend for a single additional term of one year or just one additional term or the additional term. None of that language is there. And to read that language in or any of the other linguistic alterations that the bank suggests is to fundamentally alter the originally intended language. I would also say, while we're on the subject of Ms. Cortez, that the bank cites in this reply brief a Missouri case, which involves statutory interpretation of plurals and singulars to make the point that a single is singular, a singular and plural is plural. But that case is inapposite because we know under Illinois law that the statute of statutes governs statutes and the statute of statutes holds that the plural can be the singular and the singular can be the plural. I'm not urging you to apply the statute of statutes here because we have contractual language, but that case is inapposite. So, because there is no termination date in the renewal clause, it renews automatically without end. So, are you referring to a termination date or an expiration date? And is there, isn't there a difference between the two? Yes. Okay, so I want to explain the difference, please. Yes, there's, I think we're, I think we're speaking about the same thing maybe and using different nomenclature. There's certainly an initial termination date of the letter of credit. It expires annually on December 12th, unless it's renewed 90 days before that point. But that doesn't mean that there's an ultimate termination date because there's an automatic renewal. So, if there's no September 12th notice of an intent to cancel, there's an automatic renewal that carries the letter of credit over year after year. To think of this simply, it renews annually without an end date. And that feature distinguishes this situation from much of the case law that the bank cites, including out of jurisdiction case law, we've talked about one so far, and cases that have nothing to do with automatic renewals or letters of credit. And here I would like to note that, as Your Honor mentioned, the Stringer case is completely distinguishable because it had no automatic renewal provision. The parties had to affirmatively say that they wanted to renew, not opt out. And the agreement in that case provided an explicit expiration date. We don't have that here. So, is it your position that this letter of credit did not include an expiration date? And if so, how does that square with the provision that does require notice prior to the expiration date? It had an initial expiration date or an annual expiration date. It's like a recurring contract or a subscription to a magazine. So, I think it's a bit of a muddle what my opponent is suggesting, that the agreement collapses in on itself because there's a 90-day renewal period, and yet it extends. There's nothing of the sort. That's a common commercial provision. There's an expiration date in December of each year, and there's a renewal date 90 days before that. And if there's no opt-out, then the end date extends to every subsequent December. The bank has conceded in its papers, as you heard here, that the revision to the UCC does not apply. We're dealing with the 1961 UCC. The vast majority of cases that it cites, out-of-state, federal cases, involve that UCC revision, and many, if not all, of those cases contain definitive expiration dates. There's a principle in Illinois law also that the court won't read into contracts words that aren't there or into agreements, and there's a strong presumption against fixing language to reach a certain end urged in litigation. The court won't do that, and so the court should not read in to the letter of credit an expiration date that doesn't exist. That's the Berryman case from this court. Illinois recognizes a strong presumption against provisions that easily could have been included. The bank easily could have included an expiration date in the letter of credit. It did not. That distinguishes the situation from all of the cases that the bank cites for the proposition that this is the one and only way, evidently, to word a letter of credit. There is no one way. By suggesting that the absence of an expiration date or automatic expiration date, explicit expiration date, means that the letter of credit was to remain in force or valid for the entire, that means that it would remain valid or enforced for the entire life of this mining permit. But where does it really say that? Where does it appear in this letter of credit? It doesn't, does it? I mean, you really have to rely on other documents to arrive at that conclusion, and as you yourself just said, we really can't do that. We have to confine ourselves to the analysis of the language of the letter of credit itself. That's correct, Your Honor. And I want to make clear that we are not urging the court to violate the independence principle. There's a suggestion in the reply brief that we've gone there because we suggested the logic and efficiency of the bank and the department entering into a single automatically renewing letter of credit that would not have needed after 1988. Or even 1986, if the bank had decided to pull out annual renewal while Surefire was on state land engaging in mining operations. Why would the department have made itself vulnerable to that sort of risk? Instead, and this is not a violation of the independence principle, because that forbids looking at the permitting arrangement or the contract that the Department of Revenue, I'm sorry, the Department of Natural Resources entered into with Surefire. We're not looking at any contract. We're looking at record facts. We're looking at the fact that the mining company Surefire operated for 20 years until the Secretary of State dissolved it, and then it defaulted on its bonds. And then the department drew on the letter of credit, as was its right in 2005. There's no independence principle at stake with looking at these record facts, but it makes perfect sense if you think about it from the position of the parties and certainly the department to ensure that there were protections and guarantees in place within the four corners of the letter of credit. To make the letter of credit run in tandem with the mining permit. And that's what we were able to accomplish. And reading the language, as we suggest, tracks the purpose and intent of a letter of credit is an evergreen clause. As the third district held in the Moulter case, an evergreen clause provides automatic renewal and carries out, I'm quoting, the party's intent to make the credit available for an indefinite period of time. And there's no prescription in that case for using a, or the, or the plurals or permutations that the bank suggests. The bank's arguments cannot overcome... There was, there's different language in Moulter, is there not, counsel? I mean, it says the agreement would be automatically extended without amendment for one year from the present. And then it says, or any future expiration date hereof. That's different. Undoubtedly different. And to the court's point a moment ago, there is no one way to achieve this end. There is, at least under the UCC provision from 1961 in play at the time, there is no one way. If we were to credit the bank's contentions about the post-1985 forms being the only way, then we'd have two unfortunate results. One, every letter of credit that's out there that doesn't follow something adopted a generation later would become invalid, arguably, if only something changed later were to apply retroactively. And secondly, forms could never evolve. There could never be an improvement in forms if they applied retroactively and undid the party's intent. I think we can take judicial notice of the fact that the Illinois Supreme Court's forms have changed and improved over time. That does not mean that a notice of appeal filed pursuant to an old form suddenly becomes an invalid notice of appeal because a new form appeared on the scene. And telescoping up to a threshold point about this discussion, this point of discussion, as we have been discussing, we don't go beyond the four corners of the document if there is no ambiguity. So these post-1985 forms, they're irrelevant and they should not be considered by this court. In short, the circuit court was correct on this point when it held that the post-1984 forms had no legal effect. Finally, if the court has no further questions, we would urge the court to affirm the circuit court's judgment. Thank you. Justice Fancel or Justice DeArmond, any questions at this time? Do not have any. All right. Mr. Yates, you may have time for rebuttal. Thank you, Your Honor. On the going to the independence principle, counsel says they have no desire to violate the independent or no intent to violate the independence principle while proceeding to do exactly that and argue about how clearly the underlying transaction could only mean that we have to look to that in order to know that this was supposed to be automatically extended year over year over year. To that end, we cite in our papers the Village of Long Grove case versus Austin Bank of Chicago. In that case, a letter of credit was issued. The account party instructed the issuer not to pay on the letter of credit because they said it was impossible for them to comply due to changing circumstances with the underlying contract. The issuer said, the second district of Illinois said, doesn't matter. Independence principle requires under the terms of the letter of credit and only looking to the terms of the letter of credit, issuer had to pay, had to honor on the letter of credit. That's the only thing you look at. You don't get to be on that. You don't look to the underlying contract or the documents that they referenced in their responsibility. The counsel referred to the Allstate case, which was not cited in his brief, but for the idea that it's an A and N, they are indefinite articles. And the Nice-Chavez case addresses that very point, making a distinction between countable nouns such as an additional term or non-countable nouns such as cowardice was referred to in that case. You wouldn't say a cowardice or an to cowardice. But when you're referring to something that you can count, such as an additional term or a written notice, then the word means what it says. Everything that the department urges you to do in this case is to add in while they say they honor the plain language of the contract, they are actually urging you to rewrite that which the parties agreed. We've agreed to a contract that provided for an additional term of one year period, not terms in the plural. And every single case that involves an evergreen letter of credit, there's no one way to do it, but they all have one consistent thing in common, and that is they refer to the plural or to future extensions or expiration dates and the like. So, in closing, I would urge the court to reverse. We believe the judgment of the trial court should be reversed. The court should remand and dismiss the verified complaint filed by the department. Thank you. Thank you very much. Anything further, Justice DeArmond or Justice Vancell? All right. At this time, then, the court would like to thank counsel for your arguments today. The court will take the matter under advisement and render a decision in due course.